UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JAMES L. LABER AND
LAURA M. LABER,

          Plaintiffs,              CIV. S-04-2078 DFL PAN PS

          v.

DEPARTMENT OF THE TREASURY,     FINDINGS AND RECOMMENDATIONS
INTERNAL REVENUE SERVICE,

          Defendant.

        On August 29, 2005, defendant moved for summary judgment pursuant to Fed. R. Civ. P. 56 on plaintiffs' complaint filed October 1, 2004. Plaintiffs proceed in pro se; defendant is represented by Assistant U.S. Attorney Paul S. Ham. Upon review of defendant's motion, all papers in support and opposition thereof, plaintiffs' deposition testimony before this court on October 11, 2005, and good cause appearing therefor, THE COURT FINDS AS FOLLOWS:

        Plaintiffs challenge the IRS' assessment of tax liens against them as partners in Tele-Link Communications ("Tele-Link"), an answering service for funeral homes plaintiffs operated with Robert and Mary Jane Cottell. The complaint asserts plaintiffs should not be liable for tax assessments against Tele-Link for the period March 3, 2000 through 2003 because the Cottells effected a de facto dissolution of their partnership with the Labers, absolving plaintiffs

from personal liability for any partnership debts including taxes.   Plaintiffs became sole proprietors of Tele-Link in January 2004.

On July 7, 2005, this court denied defendant's motion to dismiss and found subject matter jurisdiction pursuant to 26 U.S.C. § 6330(d) only for the one-year period October 1, 2002 through September 30, 2003, based on the following.  On June 16, 2004, the IRS filed a Notice of Federal Tax Lien with San Joaquin County for unpaid tax assessments against Tele-Link for the last quarter of 2002 and the first three quarters of 2003.  The assessments were for partnership late-filing and employment related tax liabilities based upon Tele-Link's self-reported tax liabilities on its tax returns, specifically  (1) Form 1065 late-filing penalty for the tax period ending December 31, 2002; (2) Form 940 tax liability for the tax period ending December 31, 2002; and (3) Form 941 tax liabilities for the tax periods ending December 31, 2002; March 31, 2003; June 30, 2003; and September 30, 2003.[1]  The IRS gave plaintiffs notice of the lien and their right to request an administrative hearing within thirty days.  26 U.S.C. § 6320.  Plaintiffs timely requested an administrative hearing, which was held on August 24, 2004.  The IRS issued its Notice of Determination on September 2, 2004, finding that the partnership of the Labers and Cottells remained viable during the relevant period and therefore responsible for payment of Tele-Link's taxes.  Plaintiffs were informed they had thirty days within which to file an action in district court, 26 U.S.C. § 6330(d),[2] which plaintiffs timely filed October 1, 2004.  See also Medlock v. United States, 325 F. Supp. 2d 1064, 1076 (district court has jurisdiction over

---

[1]  Form 940 reports taxes under the Federal Unemployment Tax Act (FUTA) as required by 26 U.S.C. § 3301; Form 941 reports taxes under the Federal Insurance Contributions Act (FICA) as required by 26 U.S.C. §§ 3402(a) and 3102(a). See Springfield v. United States, 88 F.3d 750, 751, n. 1, and related text (9th Cir. 1996).

[2]  The right to judicial review is conferred by 26 U.S.C. § 6330(d), which accrues after the issuance of an administrative decision on a notice to levy.  Section 6320, which provides for hearings on notices of liens, encourages that, "To the extent practicable, a hearing under this section shall be held in conjunction with a hearing under section 6330." 26 U.S.C. § 6320(c).  The language of the September 4, 2004 Notice of Determination and defendant's briefing (see, e.g., Memorandum in Support of the United States' Motion for Summary Judgment, at pp. 4-6), demonstrate that jurisdiction is properly conferred by 26 U.S.C. § 6330(d).

employment taxes).

The court's July 7, 2005 order invited plaintiffs to demonstrate this court's jurisdiction beyond the tax periods encompassed by the IRS' September 2, 2004 Notice of Determination.  However, plaintiffs have presented no evidence demonstrating their right to judicial review of any other administrative decision assessing taxes against Tele-Link for the time period 2000 through 2003.   Nor has the court found more comprehensive jurisdiction. Hence, consideration of plaintiff's complaint and defendant's motion for summary judgment is limited to the tax periods ending December 31, 2002, March 31, 2002, June 30, 2003, and September 30, 2003, that is, the one-year period October 1, 2002 through September 30, 2003.

Application of 26 U.S.C. § 6330(e) suspended and continues to suspend further tax enforcement proceedings against plaintiffs for the one-year period October 1, 2002 through September 30, 2003, pending a final determination on the merits of plaintiff's complaint. Additionally, after this court granted plaintiff's motion for a temporary restraining order on September 28, 2005, defendant agreed, on October 11, 2005 and again on October 21, 2005, to suspend collections against Tele-Link for any tax period challenged in this action pending this court's final decision.

The court's July 7, 2005 order directed the parties to address in their summary judgment briefs "the de jure and de facto status of plaintiffs' partnership with the Cottells and exposure of plaintiffs' personal assets to satisfy the 'partnership' taxes of Tele-link Communications during the calendar years 2000 through 2003."  Defendant filed briefs on August 29, 2005, October 7, 2005 and November 4, 2005; plaintiffs filed their opposition on October 31, 2004.  On September 28, 2005, the court directed the parties to appear before the court on October 11, 2005 for defendant's deposition of plaintiffs; the deposition was duly held. The November 16, 2005 hearing scheduled on defendant's motion for summary judgment was vacated and the motion submitted on the papers.

Plaintiffs proceed in a related case against the Cottells in Jim Laber et al. v.

Robert Cottell et al., Civ. S 04-1427 FCD KJM PS, pursuant to 26 U.S.C. § 6672 (private right of action for contribution). Trial is scheduled to commence in that case on November 14, 2006.

### STANDARD OF REVIEW

This court reviews the IRS' September 2, 2004 Notice of Determination for abuse of discretion. "Although Section 6330 is silent about the standard of review to be utilized in reviewing the Service's administrative determinations, the legislative history addresses the subject in detail. In general, the Court will review the determination on a de novo basis where the validity of the underlying tax liability is at issue. However, where, as here, the validity of the underlying tax liability is not properly at issue, the Court will review the Commissioner's administrative determination for abuse of discretion." Medlock, supra, 325 F.Supp.2d at 1076 (citations and internal quotations omitted); accord, Danner v. U.S., 208 F.Supp.2d 1166, 1171 (E.D.Wash. 2002) .

"An abuse of discretion is a plain error, discretion exercised to an end not justified by the evidence, a judgment that is clearly against the logic and effect of the facts as are found. When reviewing for abuse of discretion, we cannot reverse unless we have a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." Wing v. Asarco Inc., 114 F.3d 986, 988 (9th Cir. 1997) (citations and internal quotations omitted).

### STANDARDS FOR A MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue

of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id., at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id., at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586, n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the

claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

## ANALYSIS

The question on summary judgment is whether the IRS abused its discretion in determining, in its September 2, 2004 Notice of Determination, that plaintiffs were general partners in Tele-Link since March 3, 2000. If the IRS' determination is sustained, plaintiffs are responsible for paying Tele-Link's tax assessments for the one-year period October 1, 2002 through September 30, 2003.

General partners are liable jointly and severally for all obligations of the partnership, including federal taxes. Cal. Corp. Code § 16306(a); U.S. v. Galletti, 541 U.S. 114, 121 (2004); Young v. Riddell, 283 F.2d 909, 910-911 (9th Cir. 1960). A partner's dissociation is

wrongful by breach of an express provision of the partnership agreement, Cal. Corp. Code § 16602(b)(1), or by becoming a debtor in bankruptcy, Cal. Corp. Code § 16602(b)(2)(C). "A partner who wrongfully dissociates is liable to the partnership and to the other partners for damages caused by the dissociation. The liability is in addition to any other obligation of the partner to the partnership or to the other partners." Cal. Corp. Code § 16602(c).

Plaintiffs' complaint asserts they were not Tele-Link's "responsible persons" for collecting, accounting and paying employee trust fund taxes until January 2004. Plaintiffs assert the Cottells secretly filed sole proprietorship documents with the IRS in March 2000, shortly after entering into their general partnership agreement with the Labers, and proceeded to run the business on their own terms. At their deposition plaintiffs testified they obtained a state court injunction against the Cottells in January 2002; the Cottells filed bankruptcy in June 2003; plaintiffs filed papers dissociating the Cottells' as partners in June 2003; plaintiffs and the Cottells reached a settlement in December 2003; and plaintiffs became sole proprietors of Tele-Link in January 2004. The complaint asserts that through 2003 plaintiffs were "partners in name only" based on the Cottells' exercise of "total family control over all vital business transactions, [including] the duty to perform and the power to direct the collecting, accounting, and paying of trust fund taxes."[3]  Complaint, at p. 2.

However, at their deposition before this court on October 11, 2005, plaintiffs testified they should not be liable for Tele-Link's taxes from March 2000 through January 2002, when plaintiffs obtained an injunction against the Cottells. While plaintiffs testified about several alleged incidents of partnership dissociation by the Cottells,[4] they concede these actions generally

---

[3] The complaint also asserts the IRS was negligent in permitting Mary Jane Cottell, a "convicted embezzler" to assume fiduciary responsibilities for Tele-Link and that the IRS interfered with plaintiffs' contract rights by blocking the sale of their residence and their attempts to refinance.  These matters are not before the court.

[4] These alleged incidents of dissociation March 2000 through January 2002 include (1) the Cottells' filing of sole proprietorship documents with the IRS in March 2000, of which the Labers became aware in March or September 2001, (2) the Cottells' insistence Laura Laber pre-

ceased after January 2002. Plaintiffs testified they were general partners "after" January 2002 until January 2004, when they became sole proprietors.

Significantly, the tax assessments at issue in this action – for the year October 1, 2002 through September 30, 2003 – come within the time period the Labers concede they were general partners of Tele-Link. This concession is consistent with, and sufficient to sustain, the IRS' September 2, 2004 determination that plaintiffs were general partners of Tele-Link during this time period and therefore liable for payment of the company's taxes.

The IRS relied upon the following evidence in making its determination[5] (Decl. of IRS Appeals Officer Martin Splinter, Defendant's Statement of Undisputed Facts):

> (1) Plaintiffs' letter attached to their CDP request, dated July 22, 2004 ("CDP Request Letter"), wherein plaintiffs state they were

---

sign twenty-four checks which were used through August 2001, (3) the Cottells' refusal to "open the books" to the Labers, (4) the Cottells' refusal to discuss IRS' assessments against Tele-Link when the Labers first became aware of delinquencies in September 2001, and (5) insufficient funds to pay Tele-Link's payroll checks, resulting in the donation of personal funds by Laura Laber in December 2001.

[5] The IRS sustained the collection action against plaintiffs based on the following rationale (Notice of Determination, at p. 3):

The four partners in the company are two married couples . . . .Mr. And Mrs. Laber formed a business partnership with Robert and Mary Cottell on 03/03/2000. The partnership formed the business Tele-Link communications, to provide an answering service for funeral homes. The Labers invested $35,000 and Laura also brought her experience in operator services and her contacts with experienced personnel. The Labers obtained a 30% interest and the Cottells had the remaining 70%. Laura has always worked in the business.

The Labers are now suing the Cottells for illegally taking control of the finance of the partnership and failing to comply with the Uniform Partnership Act. The Cottells requested a TIM for the company and stated that it was a sole proprietorship. The request for an identifying number has been resubmitted and the company is currently listed as a partnership using the original number. In the due process hearing the Labers argued that because of the behavior of their partners, the tax liabilities should be the responsibility of the Cottells.

This issue has been previously addressed in a Collection Due Process hearing as well as by the Revenue Officers who have worked the case. The company is a partnership and the lien is against that entity. The partners were unable to propose a collection alternative.

    responsible for the "trust fund taxes (withholdings) . . .at a 100%
liability after June 6, 2003 ...[and] 40% responsible... from 3/2002
through 6/5/2003;"

    (2) an Agreement to Form a Business Partnership, dated March 3,
2000 ("Partnership Agreement Letter"), wherein plaintiffs signed
and dated the agreement holding themselves out as having a 30%
interest in Tele-Link;

    (3) a Partnership Statement of Authority to Washington Mutual
Bank, dated January 8, 2002 ("Washington Mutual Bank Letter"),
wherein plaintiffs signed and dated the letter holding themselves out
as each being a "general partner" of Tele-Link.

  The CDP Request Letter is the document most pertinent to the time period at issue.[6] Plaintiffs concede therein "40% responsibility" for "trust fund taxes" from March 2002 through June 5, 2003, and "100% liability" after June 6, 2003, when the Cottells filed for bankruptcy. Plaintiffs' alleged partial responsibility before June 6, 2003 is based upon their agreement with the Cottells regarding the allocation of Tele-Link's profits and losses. Pursuant to the "Stipulated Settlement Agreement and Order" signed by plaintiffs and the Cottells on December 10, 2003, and filed December 11, 2003 in the Cottells' bankruptcy action, Case. No. 03-92237-7 (Exhibit B to Ham Decl., Exh. 7 to Plaintiffs' Deposition), the Labers and Cottells agreed sometime after March 2001 to divide Tele-Link's profits and losses at 60% Cottells, 40% Labers. Based on the language of the Labers' original agreement with the Cottells March 2001, this division applied only to profits, losses and the sale by either family of their respective partnership interest. There is no evidence to suggest this allocation was intended to alter the couples' general partnership status nor their "joint and several liability" under Cal. Corp. Code § 16306(a). At no time have the Labers asserted theirs was a "limited partnership." See, e.g., Cal. Corp. Code § 15621 (requiring filing of certificate of limited partnership with Secretary of State).

  Accordingly, the IRS' September 2, 2004 finding that plaintiffs were general

---

[6] The Partnership Agreement Letter setting forth the parties' contract is probative of the parties' state of mind March 3, 2000, prior to the Cottells' alleged acts of dissociation; similarly, plaintiffs assert they had no option but to sign the Washington Mutual Bank Letter in order to keep Tele-Link afloat.

1  partners of Tele-Link from October 1, 2002 through December 30, 2003 is supported by the
2  documentary evidence as well as plaintiffs' deposition testimony.  The IRS' finding plaintiffs are
3  responsible for payment of the tax liens against Tele-Link for this period was not an abuse of
4  discretion.  Plaintiffs' responsibility has been established as a matter of law and defendant's
5  motion for summary judgment should be granted.

6        For the foregoing reasons, IT IS HEREBY RECOMMENDED that defendant's
7  August 2, 2004, motion for summary judgment be granted.

8        These findings and recommendations are submitted to the district judge assigned to
9  this case pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within ten days after being
10 served with these findings and recommendations, any party may file written objections with the
11 court and serve a copy on all parties.  Such a document should be captioned "Objections to
12 Magistrate's Findings and Recommendations."  The parties are advised that failure to file
13 objections within the specified time may waive the right to appeal the District Court's order.
14 <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
15 DATED:  March 27, 2006.

                      UNITED STATES MAGISTRATE JUDGE

19 006:labo2078.f&r